May it please the Court, my name is Floyd Jensen. I represent the appellants in this case. Mr. Jensen, just for the sake of my comfort level, can you assure me that there is, in fact, a real case or controversy on appeal? Yes, I can, Your Honor. If only because we have a dispute with the ruling of the district court. The other party in this case, Sprint, chose not to file an appeal, so we don't know what its position would be. Well, of course, it hasn't appeared in the case yet because of the procedural posture in which this thing came down. But it we should not be troubled by the fact that before us there's no adversarial position being taken on the district court's ruling. I don't believe so, because the issue is an issue of subject matter jurisdiction, which the Court chose to address before any defendant had appeared in the case. And that's, of course, the issue that's now before the appeals court. And the reason for that is that standing is at issue? Standing is not at issue. It's a matter of subject matter jurisdiction, Your Honor. Well, what's the subject matter jurisdiction if standing is not at issue? What is the issue? I'm not sure I understand the question. The – certainly the appellants have standing to file their lawsuit as well as to pursue the appeal because there was an adverse ruling. I don't mean that. I'm talking about the heart of the subject matter ruling. What – if it's not a question of whether the plaintiff has standing to assert a private cause of action, then what is the subject matter jurisdiction issue? Well, that is precisely the subject matter jurisdiction issue. That's what I – all right. I apologize. So that's what you agree solves the comfort level problem? Yes, I would think so. To begin with, Section 276 of the 1996 Telecommunications Act addressed the problem that payphone owners were not being paid for the use of their payphones for what are called coinless calls. Congress's intent, as expressed in that statute, was to promote competition among payphone owners and to promote the widespread deployment of payphones throughout the public. And to do that by ensuring that payphone owners would be fairly compensated for each and every call made from their payphones. Unfortunately, Congress, in enacting Section 276, did two things that my English teacher always warned against. First of all, it used the passive voice, so it wasn't explicit in the statute who should bear the payment obligation. And secondly, it used an imprecise phrase, that is, the phrase fairly compensated, so it wasn't clear exactly how much the compensation should be. Rather, the Congress ---- But you don't really expect Congress to pass a statute saying 24 cents, right? No, I wouldn't expect that. So you can't really fault them for using that vague language. This is the way Congress talks, it says. Yes, that's exactly right, Your Honor. All right. And that's not a ---- So this is not some sort of defective statute. I wouldn't say it's defective in terms of using such ---- No, I wouldn't just say Congress said exactly what it meant to say, and not more, not less, rather than sort of saying, oh, you know, it did something wrong here. And what it did not say is there's a private right of action. And why isn't that sort of beginning, the middle, and the end of the analysis? The existence of a private right of action can be based either upon explicit language in the statute or it can be implied. Yes, but implied is sort of a thing of the past. Things are seldom implied anymore. Causes of action are seldom implied. You better find it expressed somewhere. I think it's going to be better for you. Well, I think that the right of action, where does Congress confer a right at all? Never mind whether it says you have a right to X, you have a right to sue for X. Where does it say you have a right? Well, as I say, the right is implied under an analysis of the Court v. Ash case. The Court is a case that's implying a remedy, in effect, a cause of action, where there's a right and Congress has not conferred a cause of action expressly. Where is there any right conferred here? Well, our position is that the right is conferred by virtue of the context of the statute, the purpose of the statute, because that purpose could not be fulfilled unless there is a private right of action. Well, Congress often has purposes and doesn't create rights. It just says it would be nice, like adopting the words of the Pledge of Allegiance. Well, that may be so, but in this particular case. But in this case, you can't even say that much because, in fact, there is a remedy. Well. Under the FCC, which stands there 24 hours a day. There is an alternative remedy with the FCC under sections. So it's not like the example Judge Fernandez gave about the Pledge of Allegiance where, you know, Congress passes a statute that has no, maybe arguably no substantive effect at all. This is a statute that, if we read it literally, you know, don't add anything or read anything additional into it than the words immediately suggest, would not be nearly hortatory. It does give a means to achieve congressional purpose, and that is to go to the agency charged with the statute's enforcement. Actually, the statute itself does not create a right of action before the agency. The right of action for the agency would come out of sections 206 and 207 of the statute. And 207 gives an alternative right to either bring a complaint before the FCC or to sue in Federal district court. If there's a violation of this chapter. A violation of a. How do you get to a violation of this chapter? Where is it? The way you get to a violation is through the court versus action analysis of section 276. Well, but that's like two steps removed. There is no violation. I mean, the statute nowhere says that service providers shall be paid by IXPs, does it? It doesn't explicitly say that. It does say that service providers shall be paid. Well, sure. But it could be paid by, you know, the man in the moon. I mean, it doesn't mean that a service that an IXP does not pay is violating the statute. If we look at the fact that the FCC only has the power to regulate common carriers, then I think we have to come to the conclusion that Congress intended that common carriers would bear the payment obligation to the pay phone service providers. I don't think there's any way to get around that because there isn't any other way that the FCC could have ensured fair compensation to pay phone owners. So if that's the case, then we do have an identified body that is common carriers who bear the payment obligation. We have a class of persons that is pay phone owners who are entitled to the compensation. And all of that is very clear under section 276. And that satisfies the first element of court. Well, beyond that, the obligation exists in the regulation. And there's nothing in the words of the statute which suggests a right of action to sue for a violation of the regulation. Elsewhere, in the same ñ in the neighborhood, Congress did, in fact, say if that the FCC should prescribe a regulation and if that regulation is violated, there is a private right of action for it. So how do we get there in this one? I'm not sure what Your Honor is referring to, but I would say ñ Well, I'm just saying there's neither a private right of action to sue for a violation of 276, nor is there any express right of action, even if there were, to sue for a violation of the regulation, which is really what you're talking about, right? I mean, you're really saying the regulation wasn't followed. If, using the Court v. Ash analysis, we could come to the conclusion that there is implied right of action for violation of section 276, then we turn to the Alexander v. Sandoval doctrine, which extends the private right of action not only to the statute, but also to the regulation that implements it. Well, if the regulation, in effect, follows from the statute, not if it doesn't, the regulation does follow. It doesn't follow from the statute. Why? Because the statute specifically delegated to the FCC to formulate a plan to provide fair compensation to create a right. Could the regulation create a right to terrible damages or punitive damages or damages for emotional distress? You don't get your paycheck from Sprint. You can sue for money. Could it do that? Could the regulations do that? And would that be understandable? Certainly, the regulations cannot go beyond the scope of the statute that authorizes the regulations to be created. And your answer is? In this case, pardon me? And your answer to my question is? The answer to the question is, in this case, the regulations do not go beyond the scope of the statute. They simply establish a plan. I'm sorry. You didn't answer my question. Could they create a right to punitive damages? I don't believe so, unless it was within the extent. Why not? Unless it was within the intent of the Congress in enacting the statute. So you agree, then, that the regulations are only can sort of give contours to rights that Congress has already put in the statute. It can't create new rights. Absolutely. I would agree with that. And I think that the touchstone of this case. Let me get back to Judge Fernandez's original question. Where does the right come from? The touchstone of this case and of this statute is, was there an intent on the part of Congress to create a private right of action? We wouldn't be here if Congress had said in the statute there is a private right of action. The reason we're here is because. There is no rights-creating language in the statute. Well, I think there is, because the statute specifically says that payphone owners are to be fairly compensated. That is right-creating language as far as I can read it. It says go develop a plan to assure fair compensation. Well. How else would payphone owners receive fair compensation? It doesn't say, it does not say payphone providers are entitled to fair compensation. They shall not be deprived of fair compensation. I believe so. All sorts of ways to have rights-creating language. As a practical matter, why? I mean, your clients have a perfectly good remedy in the FCC. FCC, right? Why are they here? Well, Your Honor. FCC is a long ways away. The FCC is a long ways away. There are some other difficulties with going to the FCC. It's very slow. It's glacially slow. And the carriers. And the courts are lightning fast, huh? Well, the common carriers, I think, can be perceived as having too close a relationship with their regulators. Even if a payphone owner were to go to the FCC and obtain an order for payment under Section 408, the payphone owner would then have to go to court to enforce that order for payment. Ah, but on a much, much, much narrower footing. You would then have an agency order, and that agency order would then be reviewed for abuse of discretion. Yeah. I return to Section 207, which expressly provides that one who is injured by an action of a common carrier has the choice to either go to the FCC or to an internal district court. And I think that that overlying provision of the Telecommunications Act applies across the board, except where Congress has specifically deviated from that. And it has done that in some of the other sections of the Telecom Act, but not in Section 276. Mr. Johnson, you did not save any time for rebuttal. I think I have to say that it's always probably most difficult to argue against an empty chair. That is true. There is something to that. I would just conclude by saying that payphone owners will never be able to receive the compensation that Congress intended them to have unless they're able to sue in Federal court. Thank you so much. Thank you very much. Case just argued. We'll stand for a minute.
judges: Kozinski, Fernandez, Rymer